# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 13, 2022

Lyle W. Cayce
Clerk

No. 22-60100

Buckeye Partners, L.P.; Energy Transfer, L.P.;
Enterprise Products Partners, L.P.; Plains All
American Pipeline, L.P.; Colonial Pipeline Company;
Association of Oil Pipe Lines,

*Petitioners*,

*versus*

Federal Energy Regulatory Commission; United States
of America,

*Respondents*.

---

Petition for Review of an Order of the
Federal Energy Regulatory Commission

---

Before Stewart and Haynes, *Circuit Judges*.[*]

Per Curiam:[*]

---

[*] One of the judges of the panel recused himself following submission of this matter. This opinion is being entered by a quorum of this court pursuant to 28 U.S.C. Section 46(d).

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 22-60100

In 1993, the Federal Energy Regulatory Commission ("FERC") established an indexing program that oil pipelines use to set the rates they charge for the interstate transport of crude oil and refined petroleum products. Revisions to Oil Pipeline Regulations, Order No. 561, 58 Fed. Reg. 58,753 (Nov. 4, 1993) ("Order No. 561"). To ensure that the rates stay "just and reasonable" over time, Order No. 561 required FERC to reevaluate the index every five years. *Id.* at 58,754.

In January 2022, FERC issued its latest order in this five-year review scheme. Five-Year Review of the Oil Pipeline Index, Order on Rehearing, 87 Fed. Reg. 4476 (Jan 28, 2022) ("Rehearing Order"). The Rehearing Order reduced the oil pipeline index for the five-year period beginning July 1, 2021, from the Producer Price Index for Finished Goods ("PPI-FG") plus 0.78 percent to PPI-FG minus 0.21 percent. *Id.* The decrease required oil pipelines to reduce their rate ceiling levels and accordingly reduce the amount they could charge for oil transportation. Aggrieved by the Rehearing Order, five Petitioners sought review in our court. A sixth Petitioner filed a petition for review in the D.C. Circuit—where it has its principal place of business and thus where it was required to file.[1] *See* 28 U.S.C. § 2343. Because the other petitions for review had already been filed in our court, the D.C. Circuit transferred the sixth petition here. *See id.* § 2112(a)(1), (5).

Joint Intervenors—entities supporting the FERC order under review—moved to transfer this case to the D.C. Circuit, asserting that transfer "is necessary to maintain continuity and consistency in judicial

---

[1] The five Petitioners who initially filed in this court are Buckeye Partners, L.P., Energy Transfer L.P., Enterprise Products Partners, L.P., Plains All American Pipeline, L.P., and Colonial Pipeline Company. The Petitioner who initially filed in the D.C. Circuit is the Association of Oil Pipe Lines.

review of FERC's rate Indexing program."   We agree and accordingly GRANT the Joint Intervenors' motion to transfer.

## I.

We may transfer proceedings related to an order under review to any other court of appeals "[f]or the convenience of the parties in the interest of justice."   *See* 28 U.S.C. § 2112(a)(5).   Though we generally refrain from transferring a case and disturbing an aggrieved party's choice of forum, transfer is appropriate if it "serve[s] the purposes of judicial economy."   *See Tenneco Oil Co. v. EPA*, 592 F.2d 897, 900 (5th Cir. 1979) (per curiam); *see also E. Air Lines, Inc. v. Civ. Aeronautics Bd.*, 354 F.2d 507, 510 (D.C. Cir. 1965).   In evaluating whether transfer is warranted, "one factor that has considerable weight . . . is the desirability of transfer to a circuit whose judges are familiar with the background of the controversy through review of the same or related proceedings."   *E. Air Lines*, 354 F.2d at 510.   Accordingly, "where the same or inter-related proceeding was previously under review in a court of appeals, and is now brought for review of an order entered after remand, or in a follow-on phase," transfer to the original appellate court "is necessary to maintain continuity in the total proceeding."   *Pub. Serv. Comm'n v. Fed. Power Comm'n*, 472 F.2d 1270, 1272 (D.C. Cir. 1972) (per curiam) (internal quotation marks and citation omitted).

The Rehearing Order at issue here is part of FERC's index-review scheme that was originally promulgated in Order No. 561 and that has been reviewed exclusively by the D.C. Circuit for the last twenty-six years.   *See Ass'n of Oil Pipe Lines v. FERC (AOPL I)*, 83 F.3d 1424 (D.C. Cir. 1996); *Ass'n of Oil Pipe Lines v. FERC (AOPL II)*, 281 F.3d 239 (D.C. Cir. 2002); *Flying J Inc. v. FERC*, 363 F.3d 495 (D.C. Cir. 2004); *Ass'n of Oil Pipe Lines v. FERC (AOPL III)*, 876 F.3d 336 (D.C. Cir. 2017).   Each order issued as part of this review scheme reexamines the indexing rate set the previous five years and makes necessary adjustments to account for "the actual cost

No. 22-60100

changes experienced by the oil pipeline industry." *See, e.g.*, 58 Fed. Reg. at 58,754.[2]  Because each order reexamines the order issued five years prior, each is necessarily a "follow-on" to its predecessor.  What's more, all of FERC's orders regarding the oil pipeline pricing index (including the Rehearing Order at issue here) are inter-related—they are all derivatives of FERC's original Order No. 561.

True, the Rehearing Order does not raise issues "completely identical" to those previously reviewed by the D.C. Circuit; but that does not bar transfer.[3]  *See Midwest Television, Inc. v. FCC*, 364 F.2d 674, 675–76 (D.C. Cir. 1966) (per curiam).  Each order in this scheme is part of the same regulatory action—the creation and review of the oil pipeline pricing index.[4]  Thus, we view the Rehearing Order as part of a "single total proceeding," *see Pub. Serv. Comm'n*, 472 F.2d at 1272 & n.4 (internal quotation marks and citation omitted); not merely a "companion" order issued in a "cohesive scheme of regulation," *see Mobil Oil Expl. Co. v. FERC*, 814 F.2d 1001, 1003

---

[2] *See also* Five-Year Review of Oil Pipeline Pricing Index, 65 Fed. Reg. 79,711 (Dec. 20, 2000), *modified on remand by* 102 FERC ¶ 61,195 (Feb. 24, 2003); Five-Year Review of Oil Pricing Index, 71 Fed. Reg. 15,329 (Mar. 21, 2006); Five-Year Review of Oil Pricing Index, 75 Fed. Reg. 80,300 (Dec. 16, 2010); Five-Year Review of the Oil Pipeline Index, 80 Fed. Reg. 81,744 (Dec. 17, 2015).  Notably, all the orders have the same or similar names.

[3] At least one issue, however, is substantially similar.  In 2015, FERC used the middle fifty percent of cost data from the 2009–2014 period, and, on review, the D.C. Circuit held that FERC provided a reasonable explanation for doing so.  *AOPL III*, 876 F.3d at 343–44.  Though based on a new record and a different time period, FERC's decision on whether to rely on the middle fifty percent of cost data—as opposed to the middle eighty percent—is again at issue in the instant matter.  *See* 87 Fed. Reg. at 4476.

[4] Indeed, the D.C. Circuit's review of the 2000 and 2015 index orders refer to and reference the previously issued orders multiple times.  *See AOPL II*, 281 F.3d at 241, 245 (noting that FERC's 2000 order impermissibly deviated from the methodology used in Order No. 561); *AOPL III*, 876 F.3d at 342–43 (referencing the 2003, 2006, and 2010 orders in determining that FERC's 2015 order provided the required reasoned explanation for its change in methodology).

No. 22-60100

(5th Cir. 1987) (per curiam).  It "would not further the principles of 'sound judicial administration' . . . to have two courts of appeals review such closely related agency proceedings."  *Midwest Television*, 364 F.2d at 675.

Moreover, because the Rehearing Order is related to the orders previously reviewed by the D.C. Circuit, that court has "already passed on some controversies between and among the contending parties" regarding the calculation of the oil pipeline pricing index.  *See Farah Mfg. Co. v. NLRB*, 481 F.2d 1143, 1145 (8th Cir. 1973) (per curiam); *see also AOPL III*, 876 F.3d at 338 ("With limited exceptions, [FERC] has applied a generally consistent methodology, *approved by this court*, to calculate the change in normal industry costs at each five-year interval." (emphasis added)).  That, of course, does not prevent us from deciding the relevant issues in the first instance.  But the D.C. Circuit's background and experience with these specific issues further supports our conclusion that transfer will facilitate sound judicial administration and is accordingly warranted.  *See Mun. Distrib. Grp. v. Fed. Power Comm'n*, 359 F.2d 1367, 1368 (D.C. Cir. 1972) (per curiam); *see also ITT World Commc'ns, Inc. v. FCC*, 621 F.2d 1201, 1208 (2d Cir. 1980).

\* \* \*

We GRANT Joint Intervenors' motion to transfer this case to the D.C. Circuit.  FERC's motion to extend the time to file the administrative record and hold the petitions in abeyance is CARRIED WITH THE CASE for consideration by the D.C. Circuit.